IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>HAROLD AND DIANA ARCHER,<br><br>Defendants. | Civil Action No. 1:17-cv-331 Erie<br><br>Judge Mark R. Hornak |
| DIANA L. ARCHER and HAROLD L. ARCHER,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 1:18-cv-085 Erie<br><br>Judge Mark R. Hornak |

## OPINION

**Mark R. Hornak, United States District Judge**

The parties to these related actions seek declaratory relief with respect to the terms of a motor vehicle insurance policy issued to Harold and Diana Archer by Allstate Fire and Casualty Insurance Company ("Allstate"). In Allstate's action against the Archers, captioned at 1:17-cv-331, Allstate seeks a declaration that the Archers are not entitled to recover stacked underinsured motorist (UIM) benefits under the terms of their Allstate policy. In their own action, captioned at 1:18-cv-85, the Archers seek a declaration to the opposite effect. The sole legal issue presented in both actions is whether the Archers properly waived the stacking of UIM benefits

under the policy, in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law ("PMVFRL"), 75 Pa.C.S. § 1701, *et seq.*, as that law has been interpreted by the Pennsylvania appellate courts.

Presently pending before the Court are two motions. In the action brought by Allstate, the Archers have filed a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (No. 1:17-cv-331, ECF No. 9). In the related action, the Archers have filed a Motion to Remand the matter to the Court of Common Pleas of Crawford County. (No. 1:18-cv-85, ECF No. 6). Each motion is fully briefed and ripe for review.

I. **FACTUAL BACKGROUND**

In April 2011, Allstate issued an automobile insurance policy to the Archers providing coverage for two vehicles: a 2005 Chevy Silverado and a 2003 GMC Sierra. Compl. (No. 1:17-cv-331) ¶¶ 8-9. The policy provided for UIM coverage of $100,000 per person and $300,000 per accident on each of the covered vehicles. *Id.* ¶ 27. At the time of the issuance of the policy, Harold Archer executed a stacked coverage waiver wherein he waived stacking of underinsured motorist benefits. *Id.* ¶ 10.

In 2013, the Archers acquired a third vehicle, a 2005 GMC Sierra, and sought to add it to their existing policy. *Id.* ¶ 12. Allstate issued an Amended Policy Declaration reflecting the addition of the 2005 GMC Sierra, but did not obtain a new stacking rejection form. *Id.* ¶¶ 19, 32-33.

On March 3, 2015, Diana Archer was operating the 2005 Chevy Silverado when she was involved in an accident with another motorist. *Id.* ¶ 25. Following the accident, Archer made a claim for UIM benefits pursuant to her Allstate policy. *Id.* ¶ 29. The Archers contend that,

2

because they were never asked to sign a new stacked coverage waiver form when they added the 2006 GMC Sierra to their policy, Diana Archer is entitled to stacked insurance benefits amounting to $300,000 (representing the limit of $100,000/person stacked x 3 vehicles). *Id.* ¶¶ 30, 32. Allstate contends that a new stacked coverage waiver form was not required based on the Pennsylvania Supreme Court's holding in *Sackett v. Nationwide Mutual Ins. Co.*, 940 A.2d 329 (Pa. 2007) ("*Sackett II*"). *Id.* ¶ 33. Accordingly, Allstate believes the maximum available UIM coverage is the $100,000/person unstacked UIM benefit. *Id.* ¶ 34.

## II. PROCEDURAL BACKGROUND

On December 15, 2017, Allstate filed the declaratory judgment action captioned at 1:17-cv-331 seeking a determination that the UIM stacked coverage waiver signed by Harold Archer precluded the Archers from seeking stacked UIM benefits. No. 1:17-cv-331, ECF No. 1. The Archers moved to dismiss that action on February 21, 2018. *Id.*, ECF Nos. 9 and 10.

Meanwhile, on February 18, 2018, the Archers filed their own declaratory judgment action with respect to the same legal issue in the Court of Common Pleas of Crawford County, Pennsylvania. Allstate removed the Archers' state court action to this Court on March 13, 2018. No. 1:18-cv-18, ECF No.1. The Archers filed the instant motion to remand on March 19, 2018. *Id.*, ECF No. 6.

## III. STANDARD FOR REVIEW

Each of the complaints in this action seeks only declaratory relief. The Declaratory Judgment Act ("DJA") authorizes district courts to "declare the rights and other legal relations of any interested party seeking such declaration" *Esurance Insurance Company v. Bowser*, 710 F. App'x 110, 111 (3d Cir. 2018) (citing 28 U.S.C. § 2201(a)). This jurisdiction is discretionary, rather than compulsory, and should be exercised pursuant to a "general policy of restraint when

3

the same issues are pending in a state court" or where duplicative litigation would result. *Reifer v. Westport Insurance Corp.*, 751 F.3d 129, 146 (3d Cir. 2014). Similarly, where applicable state law is "uncertain or undetermined, district courts should be particularly reluctant" to exercise jurisdiction pursuant to the DJA. *State Auto Ins. Co. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000).

A challenge as to whether a court should exercise its discretionary jurisdiction under the DJA is appropriately brought as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Pursuant to Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). Because a motion regarding DJA jurisdiction "challenges subject matter jurisdiction without disputing the facts alleged in the complaint," such a motion is characterized as a facial attack and the court is required to "consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). In considering a facial challenge, courts are to apply the same standard as on review of a Rule 12(b)(6) motion for failure to state a claim. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006) (explaining "that the standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6)") (citation omitted).

## IV. **DISCUSSION**

The Declaratory Judgment Act ("DJA") authorizes district courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Because the statute states that a federal court "*may* declare the rights . . . of any interested party," the jurisdiction conferred by the statute is discretionary, and "district courts [are] under no

4

compulsion to exercise it." *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000) (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942)).

In *Summy* and, more recently, in *Reifer v. Westport*, 751 F.3d 129, 145-46 (3d Cir. 2014), the Third Circuit identified eight factors that district courts should consider in determining whether to exercise jurisdiction pursuant to the DJA. Those factors are:

(1) The likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) The convenience of the parties;

(3) The public interest in settlement of the uncertainty of the obligation;

(4) The availability and relative convenience of other remedies;

(5) A general policy of restraint when the same issues are pending in state court;

(6) Avoidance of duplicative litigation;

(7) Prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy limitation.

*Reifer*, 751 F.3d at 146; *Summy*, 234 F.3d at 134. "The fifth, sixth, and eighth factors are particularly relevant in insurance coverage cases." *Ewart v. State Farm Mutual Auto. Ins. Co.*, 257 F.Supp.3d 722, 725 (E.D. Pa. 2017) (citing *Summy*, 234 F.3d at 134)).

In the instant case, only the first, third, fifth, and seventh *Reifer* factors warrant significant discussion.[1] Each will be addressed in turn.

---

[1] As both potential forums are located in the same portion of western Pennsylvania, the second factor, the convenience of the parties, stands in equipoise. The fourth factor is not at issue because the Pennsylvania Declaratory Judgment Act, 42 Pa.C.S.A. § 7541, provides the same availability of remedies as the federal DJA. The duplicative nature of the parties' competing filings can be avoided by either remanding the state court action and dismissing the federal action or by consolidating the federal actions in this court, rendering the sixth factor neutral. Finally, the eighth factor is simply not in play under the facts of this case.

### A. Likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy

The first factor considers whether a declaration in the federal court proceeding will resolve the uncertainty that gave rise to the current controversy. There is no question that a declaration from this Court would resolve the dispute between the parties to this case. However, a state court declaration would accomplish the same thing. *See, e.g., Frederick Mut. Ins. Co. v. Target Corp.*, 2018 WL 1399375, at *4 (E.D. Pa. Mar. 19, 2018) ("While a federal court declaration could resolve uncertainty about the parties' rights and obligations under the commercial general liability policy, a state court declaration could do so as well."). Moreover, as discussed more fully below, this dispute involves an area of state law that appears to be unsettled. Consequently, our decision would not provide certainty to other parties in similar cases pending in state court. *See Ewart*, 257 F.Supp.3d at 725 ("A declaration would resolve the uncertainty of State Farm's obligation in this case. But, as we shall see, a decision here will not provide certainty in similar cases because the Pennsylvania courts are still developing the contours of the statutory notice requirements."). Based on these considerations, we conclude that this factor weighs against exercising jurisdiction.

### B. Public interest in the resolution of the uncertainty of the obligation

The third *Reifer* factor considers the public's interest in the resolution of the uncertainty of the obligation at issue. As a general matter, "[t]he public interest will not be better served by the federal court deciding the insurance coverage issue when the state court, which has more familiarity with the underlying cases, can equally well decide the issue." *Burke-Dice v. Gov't Employees Ins. Cos.*, 2017 WL 3485873, at *4 (quoting *Allstate Ins. Co. v. Antoine*, 2012 WL 707069, at *3 (E.D. Pa. Mar. 6, 2012)). *See also Frederick Mutual*, 2018 WL 1399375, at *4 (noting that insurance issues governed by state law "[have] no special call on the federal

forum"). As with the first factor, this is particularly true where "the case turns on circumstance-specific determinations to be made under relatively undetermined state law." *Burke-Dice*, 2017 WL 3485873, at *4 (holding that "the public interest [is] better served by allowing the state court [to] decide" unsettled state law issues). *See also Ford Motor Co. v. Ins. Com'r of Com. of Pa.*, 874 F.2d 926, 933 n. 10 (3d Cir. 1989) (recognizing, in another context, the "state's significant interest in the regulation of its insurance industry"). Consequently, this factor weighs against federal jurisdiction.

### C. General policies of restraint when similar issues are pending in state court

The fifth *Reifer* factor advises federal courts to exercise restraint when confronted with novel and unsettled state law claims. As noted by the Third Circuit, when "state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to 'step back' and be 'particularly reluctant' to exercise DJA jurisdiction." *Reifer*, 751 F.3d at 148. "The fact that district courts are limited to predicting – rather than establishing- state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'" *Reifer*, 751 F.3d at 148 (quoting *Summy*, 234 F.3d at 135)).

As noted above, the PMVFRL generally requires automobile insurers to provide stacked UIM coverage in multiple-vehicle policies unless stacked coverage is explicitly waived by the insured. *See* 75 Pa.C.S.A. § 1731, 1738; *Ewart*, 257 F.Supp.3d at 725-26. Stacked coverage may be waived by signing and returning a rejection form which complies with the PMVFRL. *Id.* § 1738. The issue underlying the instant dispute concerns when and how often an insurer must obtain a new stacking waiver form as the result of a change in the insured's circumstances. Pennsylvania courts continue to address novel scenarios related to this specific issue.

7

The parties agree that the starting point for any analysis involving stacked coverage waivers is a trio of Pennsylvania decisions referred to as the "*Sackett* trilogy." In *Sackett v. Nationwide Mut. Ins. Co.*, 919 A.2d 194, 202 (Pa. 2007) ("*Sackett I*"), the Pennsylvania Supreme Court held that the addition of a new vehicle to a multi-vehicle policy pursuant to an after-acquired-vehicle clause constitutes a purchase of new uninsured and underinsured coverage, necessitating a new waiver of stacked coverage. *Sackett I*, 919 A.2d at 202. In *Sackett II*, the Court clarified that the holding in *Sackett I* applied only to policies that cover an added vehicle for a finite number of days, after which time a new stacked coverage waiver is required. *Sackett v. Nationwide Mut. Ins. Co.*, 940 A.2d 329, 344 (Pa. 2007) ("*Sackett II*"). On the other hand, when a policy generally provides open-ended coverage for any vehicle added during the policy period pursuant to an after-acquired-vehicle clause, then that extension of coverage "is not a new purchase of coverage . . . and thus, does not trigger an obligation on the part of the insurer to obtain new or supplemental UM/UIM stacking waivers." *Sackett v. Nationwide Mut. Ins. Co.*, 940 A.2d 329, 344 (Pa. 2007) ("*Sackett II*"). In *Sackett III*, the Pennsylvania Superior Court, applying *Sackett II*, held that the Sacketts' particular insurance policy defaulted to stacked UM/UIM coverage because the policy expressly covered their new vehicle for only thirty days and the insurer had not obtained a new stacked coverage waiver after that time. *Sackett v. Nationwide Mut. Ins. Co.*, 4 A.3d 637, 641 (Pa. Super. 2010) ("*Sackett III*").

In the wake of the *Sackett* trilogy, "Pennsylvania law governing requirements for an effective waiver of coverages [has] continue[d] to evolve." *Ewart*, 257 F.Supp.3d at 726. In *Bumbarger v. Peerless Indemnity Ins. Co.*, 93 A.3d 872 (Pa. Super 2014), for example, the Pennsylvania Superior Court considered whether the addition of a new vehicle to a policy by way of a validly executed endorsement, rather than an after-acquired-vehicle clause, required a

new stacked coverage waiver. *Bumbarger*, 93 A.3d at 873-74. The court concluded that the acquisition of a vehicle pursuant to an endorsement represented a new purchase of insurance coverage, obligating the insurer to obtain a new waiver of stacked UIM coverage. *Id.* at 879. Under such a scenario, the after-acquired-vehicle clause addressed in the *Sackett* cases "is simply inapplicable." *See Pergolese v. Standard Fire Ins. Co.*, 162 A.3d 481, 490 (Pa. Super. 2017) (discussing *Bumbarger*, 93 A.3d at 878).

In *Pergolese*, the Pennsylvania Superior Court added a distinction between replacement vehicles and newly added vehicles, noting that a new stacked coverage waiver is only required in the latter scenario. *Pergolese*, 162 A.3d at 489-90. Significantly, the three-judge panel issued three separate opinions on this issue, exemplifying "how unsettled the issue is." *See Ewart*, 257 F.Supp.3d at 727.

Most recently, in *Newhook v. Erie Insurance Exchange*, 1917 EDA 2017 (Pa. Super. Apr. 25, 2018), the Pennsylvania Superior Court addressed another scenario in which the insured added a new vehicle to an existing policy by way of an endorsement (accompanied by the issuance of an amended declarations page) rather than pursuant to an after-acquired-vehicle clause. Applying *Bumbarger* and *Pergolese*, the court reiterated that the after-acquired-vehicle clause is not invoked when a new vehicle is added by way of endorsement. Consequently, the court held that the insurer should have obtained a new stacking waiver form from the insured in order to effectuate a waiver of stacked coverage. A motion for re-argument of the *Newhook* decision is currently pending in the Pennsylvania Superior Court, and the Pennsylvania Supreme Court has yet to weigh in on this issue.

These decisions demonstrate the fluid and unsettled nature of Pennsylvania law with respect to stacked coverage waiver issues. In particular, the Court notes that the anticipated

9

decision on re-argument in *Newhook* (and any subsequent appeal to the Pennsylvania Supreme Court) would undoubtedly affect the resolution of this case because, as in *Newhook* and *Bumbarger*, the Archers contend that the 2005 GMC Sierra was added to their insurance policy pursuant to an endorsement, rather than an after-acquired-vehicle clause. In light of the "unsettled" and "evolving" nature of this area of law, we are particularly mindful of the Third Circuit's admonition for district courts "to 'step back' and be 'particularly reluctant' to exercise DJA jurisdiction" under such circumstances. *Reifer*, 751 F.3d at 148. Indeed, district courts have frequently declined to exercise DJA jurisdiction when novel state law issues are presented and "there are no federal interests at stake." *Maxum Indem. Co. v. Heyl & Patterson, Inc.*, 2011 WL 4048377, at *3 (W.D. Pa. Sep. 12, 2011). *See also Ewart*, 257 F.Supp.3d at 726-27 (declining to exercise federal DJA jurisdiction because of the unsettled nature of Pennsylvania law with respect to stacked coverage waiver issues); *Hixson v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 201724, at *2 (W.D. Pa. Jan. 16, 2014) (declining to exercise DJA jurisdiction because the interpretation of the PMVFRL's provisions regarding stacked coverage waivers "has no relation to, or effect on, any federal law or right" and involves an area of law that "is uncertain or undetermined") (citing *Summy*, 234 F.3d at 135); *Allstate Prop. and Cas. Ins. Co. v. Owens*, 2011 WL 94412, at *2 (W.D. Pa. Jan. 11, 2011) (noting that state insurance coverage issues present no federal question and promote no federal interest, a factor which "weighs heavily" against exercising federal DJA jurisdiction).

Consistent with the foregoing, we conclude that this factor weighs strongly against exercising federal jurisdiction over the instant actions.

## D. Prevention of procedural fencing

The seventh factor expresses concern that a party might use a federal declaratory judgment action as a method of "procedural fencing" or as a means to provide another forum in a race for *res judicata*. *Reifer*, 751 F.3d at 146. Relying heavily on *Westport Insurance Corporation v. Hippo Fleming & Pertile Law Offices*, 2016 WL 1715194 (W.D. Pa. Apr. 28, 2016), Allstate contends that the Archers' attempt to create a parallel state proceeding by filing a state declaratory judgment action after Allstate had already initiated the federal proceeding is precisely the type of improper procedural fencing condemned in *Reifer*.

In *Westport Insurance*, the court determined that the *Reifer* factors favored the exercise of federal jurisdiction over a declaratory judgment complaint filed by an insurer despite that the insureds "attempted to create a pending parallel state-court action by filing their own complaint in [state court] over two months after [the insurer] filed the [federal] action." *Id.* at *4. The court characterized the initiation of a parallel action in state court while the federal action was pending as "an improper act of procedural fencing" and "a waste of judicial economy and resources." *Id.*

Allstate's reliance on *Westport Insurance* for this proposition is misplaced for several reasons. As an initial matter, the Third Circuit addressed this precise scenario in *Summy* and concluded that it was "irrelevant that [a] state declaratory judgment petition was filed after its counterpart in the District Court." *Summy*, 234 F.3d at 136. *See also Esurance*, 710 F. App'x at 111-12 & n. 2 (noting that a "subsequently filed state court declaratory judgment action" designed to create a parallel state proceeding is not improper); *Ironshore Speciality Ins. Co. v. Haines & Kibblehouse, Inc.*, 3 F.Supp.3d 303, 309-10 & n. 23 (explaining that the sequence of filing of declaratory judgment actions is of no import). To the contrary, the Third Circuit has expressed greater concern that "the state's interest in resolving its own law must not be given

11

short shrift simply because one party or indeed, both parties, perceive some advantage in the federal forum." *Summy*, 234 F.3d at 136.

Secondly, the primary relevance of a parallel state proceeding in the DJA context is the weight ascribed to the existence or absence of a parallel proceeding under the *Reifer* analysis. As explained by the Third Circuit, "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction," and "district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." *Reifer*, 751 F.3d at 144. However, to the extent that the Archers had hoped to avoid the "rebuttable presumption in favor of exercising [federal] jurisdiction" that applies in the absence of parallel state proceedings, *Ewart*, 257 F.Supp.3d at 725, the prompt removal of their state court action eliminated both the parallel proceeding and the procedural advantage that they might have hoped to obtain. Because there is no parallel proceeding pending, Allstate's concerns over "procedural fencing" are illusory and fail to tip the seventh *Reifer* factor in favor of federal jurisdiction.

### E. Summary of *Reifer* Factors

Having balanced the eight factors delineated by the Third Circuit in *Reifer*, the Court concludes that each of the salient factors weighs against the exercise of federal jurisdiction. In particular, the Court is mindful of the Third Circuit's admonition that federal courts should "step back" and allow unsettled and novel state law issues to be resolved by the state courts. *See Reifer*, 751 F.3d at 148; *see also Summy*, 234 F.3d at 135 (warning district courts not to "entertain jurisdiction over a declaratory judgment action that implicates unsettled questions of state law" because "[s]uch matters should proceed in normal fashion through the state court system"). Consequently, in the exercise of this Court's discretion, and under the specific

circumstances of this case, the Court will not exercise jurisdiction over the declaratory judgment actions that form the subject of this Memorandum Opinion.

## V. CONCLUSION

For each of the foregoing reasons, the Archers' Motion to Dismiss in Civil Action No. 1:17-cv-331 (ECF No. 9) and the Archers' Motion to Remand in Civil Action No. 1:18-cv-85 (ECF No. 6) will each be granted.

An appropriate order will issue in each case.

Mark R. Hornak
United States District Judge

Dated: June 4, 2018

cc: All counsel of record